**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

|  |  |
|---|---|
| State of Ohio, et al., | ) |
| Petitioners, | ) |
| v. | ) Case No. 22-1081 |
|  | ) (and consolidated cases) |
| United States Environmental Protection Agency, et al., | ) |
|  | ) **NOT YET SCHEDULED FOR** |
| Respondents. | ) **ORAL ARGUMENT** |

**MOTION OF FORD MOTOR COMPANY, VOLKSWAGEN GROUP OF AMERICA, INC., BMW OF NORTH AMERICA, LLC, AMERICAN HONDA MOTOR CO., INC., AND VOLVO CAR USA LLC TO INTERVENE IN SUPPORT OF RESPONDENTS**

Pursuant to Federal Rule of Appellate Procedure 15(d) and D.C. Circuit Rule 15(b), Ford Motor Company ("Ford"), Volkswagen Group of America, Inc. ("Volkswagen"), BMW of North America, LLC ("BMW Group"), American Honda Motor Co., Inc. ("Honda"), and Volvo Car USA LLC ("Volvo Cars," and together, "the Automobile Manufacturers") move to intervene in support of respondents in these consolidated actions seeking review of the Environmental Protection Agency (EPA) decision titled *California State Motor Vehicle Pollution Control Standards; Advanced Clean Car Program; Reconsideration of a Previous Withdrawal of a Waiver of Preemption; Notice of Decision*, 87 Fed. Reg. 14332

(Mar. 14, 2022) ("Waiver Decision").

The Automobile Manufacturers—which sold millions of motor vehicles in the United States in 2021—support the Waiver Decision and California's ability to regulate greenhouse gas emissions from new light-duty motor vehicles. Ford, Volkswagen, BMW Group, Honda, and Volvo Cars are committed to reducing greenhouse gas emissions in their own fleets. Ford has committed to invest more than $50 billion by 2026 to put electric vehicles on the road across the world. By 2026, Ford expects to produce more than 2 million electric vehicles annually. By 2030, Ford expects electric vehicles to represent half of global volume. Similarly, the Volkswagen Group is in the midst of deploying a $40 billion electrification development plan to accelerate the timeline to introduce an increasingly broad range of electrified vehicles globally, and plans to invest $7.1 billion in the North American region over the next five years to drive 55% of U.S. sales to be fully electric by 2030. By 2030, the Volkswagen Group anticipates having over 75 EV models and projects a cumulative volume of 26 million electrified vehicles produced, globally. For its part, BMW Group intends to have more than 7 million vehicles with electrified drive systems on the road worldwide by 2030, two thirds of them all-electric variants. By 2030, BMW Group expects electric vehicles to represent half of global volume. As a result, emissions from BMW Group vehicles per mile driven will fall by around 40 percent. Honda has announced that 100% of

its vehicles worldwide will be electrified by 2040, with plans to launch more than 30 different electric vehicle models by 2030, anticipating sales of more than 2 million electric vehicles that year. And Volvo Cars is committed to becoming a leader in the fast-growing premium electric car market. By 2025 it aims to sell 1.2 million cars globally, with at least half being fully electric cars. By 2030, it plans to become a fully electric car company.

The Automobile Manufacturers are committed to working with California (and all states) to combat climate change. In 2020, after EPA relaxed federal greenhouse gas emissions standards for Model Years 2021 through 2026, Ford, Volkswagen, BMW Group, Honda, and Volvo Cars entered into individual agreements with California to commit to greenhouse gas emission reductions that exceeded those required by EPA. Ford, Volkswagen, BMW Group, Honda, and Volvo Cars each agreed to those reductions in light of their potential obligations to comply with California's Advanced Clean Car (ACC) program, which EPA had approved through a waiver of preemption, then disapproved by rescinding the waiver, and has now re-approved in the Waiver Decision at issue in this litigation. With these historic agreements, known as the "California Framework Agreements," Ford, Volkswagen, BMW Group, Honda, and Volvo Cars demonstrated their commitment to working constructively with California to reduce emissions even in an uncertain regulatory environment.

California has long played an important role in regulating emissions in the automobile industry alongside EPA.  California emissions regulation has helped to maintain a level playing field as the industry continuously innovates and uses ever-lower-emitting technologies. This has helped enable the Automobile Manufacturers to address the emissions from motor vehicles they sell, including in states such as California where the effects of air pollution are especially severe. California's role as a leader in driving reductions in emissions from motor vehicles is critical to enabling the automobile industry to address these challenges effectively and under a consistent set of standards.  Now, electrification is the innovation that will eliminate emissions from vehicles while also providing drivers with performance, power, and digital integration that was never possible before. Confirming the validity of the Waiver Decision will promote stability and regulatory certainty while the industry goes electric.

As companies directly regulated by California law and the Waiver Decision, the Automobile Manufacturers have an obvious and substantial interest in this litigation and in advocating for the Court to deny the petitions for review.  The Court should grant intervention.

## BACKGROUND

A.     Section 202(a) of the Clean Air Act requires EPA to establish standards for emissions of pollutants from new motor vehicles that cause or

contribute to air pollution that may reasonably be anticipated to endanger public health or welfare.  *See* 42 U.S.C. § 7521(a).  EPA began regulating greenhouse gas emissions under this authority in 2010.  75 Fed. Reg. 24,324 (May 7, 2010).

The State of California also has long played an important role in regulating emissions from new automobiles in parts of the United States.  While the Clean Air Act generally preempts state emissions standards, Section 209(b) of the Act directs EPA to grant a waiver of preemption for any state that adopted such standards prior to March 30, 1966—a category that covers only California—so long as the state's standards are at least as protective as those of the federal government and other specified criteria are satisfied.  *See* 42 U.S.C. § 7543(b).  Other states may then "opt in" to adopt California's standards.  *See* 42 U.S.C. § 7507.  Congress created the exception for California in 1967 in light of its unique history of regulating emissions, its regulatory expertise, and its challenging air pollution problems—attributable primarily to motor vehicles.  EPA and its predecessor (the Department of Health, Education and Welfare) have repeatedly granted waivers to California under Section 209(b) since the Clean Air Act's inception over a half century ago.  *See*, *e.g.*, 33 Fed. Reg. 10,160 (July 16, 1968) (waiver of California standards for Model Year 1969).

In 2013, EPA granted California's request for a waiver of Clean Air Act preemption to, among other things, enforce its own standards for motor vehicle

emissions for Model Year 2017 and later, known as the California ACC program standards. *See California State Motor Vehicle Pollution Control Standards; Notice of Decision a Granting a Waiver of Clean Air Act Preemption for California's Advanced Clean Car Program and a Within the Scope Confirmation for California's Zero Emission Vehicle Amendments for 2017 and Earlier Model Years*, 78 Fed. Reg. 2111 (Jan. 9, 2013).

EPA also collaborated with California and other stakeholders to promulgate a more stringent and aligned set of "One National Program" standards for new light-duty vehicles for Model Years 2017 to 2025. *See 2017 and Later Model Year Light-Duty Vehicle Greenhouse Gas Emissions and Corporate Average Fuel Economy Standards*, 77 Fed. Reg. 62,624 (Oct. 15, 2012).

B.     In 2019, however, EPA promulgated a joint rule with the National Highway Traffic Safety Administration (NHTSA), known as the SAFE Rule Part 1, purporting to withdraw California's preemption waiver. *See The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One National Program*, 84 Fed. Reg. 51,310 (Sept. 27, 2019). And in 2020 EPA and NHTSA promulgated a final rule, known as the SAFE Rule Part 2, significantly weakening federal emissions standards for new light duty vehicles produced in Model Years 2021 to 2026. *See The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule for Model Years 2021-2026 Passenger Cars and Light Trucks*, 85 Fed. Reg. 24174 (Apr. 30,

2020).  Both SAFE Part 1 (withdrawing the California preemption waiver) and SAFE Part 2 (adopting less stringent EPA greenhouse gas emissions standards and NHTSA fuel economy standards) were challenged in this Court, and those actions have been held in abeyance.

In the meantime, while litigation challenging the SAFE Part 1 and SAFE Part 2 rules was pending, Ford, Volkswagen, BMW Group, Honda and Volvo Cars each entered into the California Framework Agreements with California.[1]  The automakers that joined these agreements are often called the Framework Companies.  The Framework Companies agreed to adhere to greenhouse gas emission reductions that are more stringent than the SAFE Part 2 standards but less stringent than the California ACC program standards.  The Framework Companies entered into the agreements in light of the uncertainties of the ongoing SAFE litigation, the companies' business plans to achieve more stringent standards, and their commitment to combat climate change.  They understood that the withdrawal of California's waiver and the loosening of the federal standards might not survive judicial review and were highly likely to be reconsidered in the event of a change in administration.

---

[1] The agreements are available at https://ww2.arb.ca.gov/news/framework-agreements-clean-cars.

C.      On December 31, 2021, after a change in administration, EPA issued a Final Rule revoking the less stringent SAFE Rule Part 2 standards and establishing more stringent greenhouse gas emission regulations for new light-duty motor vehicles produced for Model Years 2023 to 2026.  EPA noted the importance of the Automobile Manufacturers' participation in the California Framework Agreements to EPA's determination to impose stricter standards:  "The California Framework Agreement provisions, and the fact that five automakers representing nearly 30 percent of national U.S. vehicle sales voluntarily committed to them, at a minimum provide a clear indication of manufacturers' capabilities to produce cleaner vehicles than required by the SAFE rule standards in the implementation timeframe of EPA's revised standards."  86 Fed. Reg. at 74,458. Challenges to that Final Rule are currently pending in this Court.

D.      On March 14, 2022, EPA issued the Waiver Decision at issue here, rescinding the 2019 waiver withdrawal and reinstating the 2013 waiver of preemption for California's ACC program.  EPA noted the reliance interests of the Automobile Manufacturers and others automakers that had developed product and compliance plans in light of the original waiver and California's longstanding regulatory authority, concluding that SAFE Rule Part 1 "did not give appropriate consideration to the passage of time and the reliance interests that had developed

between the granting and the revocation of the ACC program waiver." 87 Fed. Reg. at 14,351 & n.170; *see also* 87 Fed. Reg. at 14,346, 14,350 & nn.115, 162.

E.     There are currently four pending petitions for review of the Waiver Decision, filed by petitioners including the State of Ohio and other states, the American Fuel & Petrochemical Manufacturers, the Iowa Soybean Association, and the Clean Fuels Development Coalition.  All of these cases have been consolidated.  *See* Case Nos. 22-1081, 22-1083, 22-1084, 22-1085.

Petitioners in No. 22-1081 do not object to this motion.  Petitioners in Nos. 22-1083, 22-1084, and 22-1085 take no position.

## ARGUMENT

The Automobile Manufacturers seek to intervene in support of respondents and will urge the Court to affirm the Waiver Decision.  As companies that are directly regulated by California, that have entered into agreements with California committing to reduce greenhouse gas emissions rapidly in their light-duty fleets, and that support California's continued engagement in reducing vehicle emissions, the Automobile Manufacturers have a substantial interest in this litigation and in advocating for the Court to uphold the Waiver Decision.

### I.     The Automobile Manufacturers Satisfy the Standards for Intervention as of Right

Federal Rule of Appellate Procedure 15(d) allows a party to intervene in a proceeding to review agency action if a motion for leave to intervene is timely and

"contain[s] a concise statement of the interest of the moving party and the grounds for intervention."  Fed. R. App. P. 15(d).  All of the requirements for intervention as of right are satisfied in this case.

A.    This Court has held that "intervention in the court of appeals is governed by the same standards as in the district court."  *Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997) (emphasis omitted).  Under Federal Rule of Civil Procedure 24(a), a party has a right to intervene if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2); *see Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013).  These requirements are satisfied here.  Indeed, because the Automobile Manufacturers are direct objects of California's regulations, it is self-evident that they have the requisite interest in this litigation.

The Automobile Manufacturers seek to intervene in these consolidated cases to protect their substantial interests in the emissions regulations that govern production and sale of all light-duty vehicles sold in California and in states that opt-in to the California standards.  As parties that the Waiver Decision enables California to regulate, the Automobile Manufacturers have a significant and legally

10

protected interest in participating in this Court's adjudication of challenges that will determine EPA's authority to issue waivers and California's role in regulating emissions going forward.  Complying with emissions regulations requires lengthy advance planning, and the Automobile Manufacturers have taken steps to transform their businesses to ensure that their vehicles will comply with stricter emissions standards, including California's.  Regulatory stability and a level regulatory playing field that applies to the entire industry are critical to the Automobile Manufacturers.

Because of the California Framework Agreements, the Automobile Manufacturers also have a special interest in defending the Waiver Decision, which will require all automakers to comply with California's emissions regulations and reduce emissions more rapidly.  The Automobile Manufacturers have supported stricter greenhouse gas standards even when EPA did not, and agreed with California to abide by standards for Model Years 2021 and 2022 that are more stringent than the applicable federal rules.  But most automakers did not similarly agree to abide by those more stringent standards for Model Years 2021 and 2022, and will be subject to less stringent standards if the Waiver Decision is vacated.  So while the Automobile Manufacturers are committed to the stringent Framework standards even if the Waiver Decision is vacated, their competitors are not, and the Automobile Manufacturers thus have a significant interest in ensuring

that California's regulatory authority applies to all automakers to enable a level playing field.

The Automobile Manufacturers' interests are not adequately represented by any other party in this case. This Court has held that adequate representation is not an onerous standard; rather, "a movant ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation." *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (quotation marks omitted). While EPA will defend the Waiver Decision, it cannot, as a government agency, adequately represent the interests of private, commercial entities. The same is true for the State of California, which has also sought to intervene. Indeed, this Court "look[s] skeptically on government entities serving as adequate advocates for private parties." *Id.* (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d. 728, 736 (D.C. Cir. 2003)). As manufacturers selling vehicles in the United States and regulated by both EPA's and California's emission standards, the Automobile Manufacturers can articulate the impact that the petitioners' challenge, if successful, would have on the auto industry in a manner that EPA and California cannot. *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (finding regulated parties' interests more "focus[]ed" than the government interest).

Accordingly, this Court has repeatedly allowed manufacturers to intervene in analogous cases, including allowing several of the manufacturers that entered into the California Framework Agreements to intervene in the litigation challenging the SAFE Rule Part 2, and allowing a group of manufacturers to intervene in the litigation challenging the Biden Administration's new federal emissions standards.  *See* Order, *Texas v. EPA*, No. 22-1031 (April 20, 2022); Order, *Competitive Enterprise Institute, et al. v. NHTSA*, No. 20-1145 (Oct. 19, 2020); *see also* Order, *California v. EPA,* No. 18-1114 (D.C. Cir. Oct. 18, 2018) (granting intervention motion by group of automobile manufacturers in a challenge to federal emissions standards); Order, *California v. EPA*, No. 08-1063 (D.C. Cir. Apr. 3, 2008) (granting intervention motion by various automobile manufacturers in challenge to EPA Clean Air Act § 209(b) waiver decision).

B.    The Automobile Manufacturers have Article III standing because they have substantial interests that could be adversely affected by this litigation.[2] Because the Automobile Manufacturers "satisf[y] Rule 24(a)," they "also meet Article III's standing requirement."  *Roeder v. Islamic Repub. of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).  And as noted, because they are entities regulated by the

---

[2] In any event, this Court's precedent requiring defensive intervenors to establish standing is unsound.  *See Virginia House of Delegates v. Bethune-Hill,* 139 S. Ct. 1945, 1951 (2019) (explaining that an intervenor supporting defendants need not show standing because it is not invoking the court's jurisdiction).  Other circuits have correctly held that defensive intervenors need not establish standing.  *See, e.g.*, *King v. Governor of New Jersey*, 767 F.3d 216, 245-246 (3d Cir. 2014).

rule at issue, their standing is "self-evident." *Fund For Animals*, 322 F.3d at 733-34; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561(1992) ("[T]here is ordinarily little question" that person has standing where he "is himself an object of" a challenged governmental regulation.). The Waiver Decision authorizes California regulations that directly regulate the Automobile Manufacturers and their competitors, and any vacatur of the Waiver Decision would undermine the Automobile Manufacturers' interest in a level playing field for all manufacturers.

Indeed, because the Automobile Manufacturers have committed to complying with the California Framework Agreements, they have significant interests in ensuring that other automobile manufacturers are required to comply with California's regulations—regulations the Automobile Manufacturers took into account in entering into the Framework Agreements. *See Crossroads Grassroots Policy Strategies*, 788 F.3d at 317 (injury-in-fact exists "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit"); *see Fund for Animals*, 322 F.3d at 733-34 (same); *Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998) (same).

C.     The motion to intervene is timely:  it has been filed within 30 days of the first petition for review and before the June 13, 2022 deadline the Court set for procedural motions. *See* Fed. R. App. P. 15(d); Order (May 13, 2022).  This motion qualifies as a timely motion to intervene in all previously and subsequently

14

filed cases in this Court also involving challenges to the Waiver Decision. *See* D.C. Circuit Rule 15(b) ("A motion to intervene in a case before this court concerning direct review of an agency action will be deemed a motion to intervene in all cases before this court involving the same agency action or order, including later filed cases . . . .").

## II.     Alternatively, the Automobile Manufacturers Have Satisfied the Standards for Permissive Intervention

Although the Automobile Manufacturers are entitled to intervene as of right, they at minimum satisfy the requirements for permissive intervention under Rule 24(b), which requires only that a proposed intervenor have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Rule 24(b) . . . provides basically that anyone may be permitted to intervene if his claim and the main action have a common question of law or fact," *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967), absent any indication of prejudice or delay.

The intervention here is timely; the Automobile Manufacturers seek to intervene to defend the Waiver Decision, thus necessarily presenting a defense that shares common questions of law and fact with the main action; and intervention will not prejudice or delay any party.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to intervene.

Dated: June 7, 2022

Mark W. Redman
BMW GROUP
Corporate Counsel
AJ-NA
300 Chestnut Ridge Road
Woodcliff Lake, NJ 07677-7731
(201) 307-3610
mark.redman@bmwna.com

David M. Lehn
WILMER CUTLER PICKERING HALE &
  DORR LLP
1875 Pennsylvania Ave. NW
Washington, DC 20006
(202) 663-6000
david.lehn@wilmerhale.com

Benjamin Hanna
Chaz Kelsh
WILMER CUTLER PICKERING HALE &
  DORR LLP
617-526-6000
benjamin.hanna@wilmerhale.com
chaz.kelsh@wilmerhale.com

*Counsel for BMW of North America, LLC*

Kenneth J. Markowitz
Stacey H. Mitchell
Pratik A. Shah
AKIN GUMP STRAUSS HAUER AND FELD
2001 K Street NW
Washington, DC 20006-1037
(202) 887-4000
kmarkowitz@akingump.com
shmitchell@akingump.com
pshah@akingump.com

*Counsel for Volkswagen Group of America*

Respectfully submitted,

By: /s/ Elisabeth S. Theodore
Jonathan S. Martel
Elisabeth S. Theodore
Ethan G. Shenkman
ARNOLD & PORTER KAYE SCHOLER
  LLP
601 Massachusetts Ave. NW
Washington, DC 20001-3743
(202) 942-5000
jonathan.martel@arnoldporter.com
elisabeth.theodore@arnoldporter.com
ethan.shenkman@arnoldporter.com

Steven Croley
Chief Policy Officer and General
Counsel
FORD MOTOR COMPANY
One American Road
Dearborn, MI 48126-2798
(313) 480-8803
scroley@ford.com

Evan Belser
Policy Strategist and Managing
Counsel
Office of General Counsel
FORD MOTOR COMPANY
801 Pennsylvania Ave NW, Suite 400
Washington, DC 20004
(202) 997-0217
ebelser1@ford.com

*Counsel for Ford Motor Company*

16

John W. (Jack) Alden Jr.
Associate General Counsel
American Honda Motor Co., Inc.
1919 Torrance Blvd., MS 300-2-1D
(310) 291-0389
jack_alden@na.honda.com

*Counsel for American Honda Motor
Co., Inc.*

Michael Thomas
Legal Director and Secretary
Volvo Car USA LLC
1800 Volvo Place
Mahwah, NJ 07430
(201) 981-9486
michael.thomas@volvocars.com

*Counsel for Volvo Car USA LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, the proposed intervenors make the following disclosures:

Ford Motor Company states that it has no parent corporation.  As of December 31, 2021, no publicly-traded companies have disclosed that they own 10% or more of Ford's common stock.

Volkswagen Group of America, Inc. is a wholly owned subsidiary of Volkswagen, AG, a publicly traded German corporation. VWGoA has no publicly traded subsidiaries. VWGoA imports, markets, sells and distributes automobiles and thus is directly affected by the rule challenged in the underlying petitions for review.

BMW of North America, LLC, is a wholly owned subsidiary of Bayerische Motoren Werke Aktiengesellschaft ("BMW AG").  No publicly traded company has disclosed that it owns 10% or more of BMW AG's stock.

American Honda Motor Co., Inc. is a wholly-owned subsidiary of Honda Motor Co., Ltd.  No other publicly traded corporation owns 10% or more of the stock of American Honda Motor Co., Inc.

Volvo Car USA LLC is a wholly-owned subsidiary of Volvo Car North America, LLC, which is wholly-owned by Volvo Car Corporation. Volvo Car

Corporation is wholly-owned by Volvo Car AB, a Swedish publicly-traded company, and ultimately by Zhejiang Geely Holding Group Co., Ltd. No other publicly traded corporation owns ten percent or more of Volvo Car USA LLC.

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), the Automobile

Manufacturers submit this certificate.

**Parties, Intervenors, and Amici:** The following provides the current

parties, proposed intervenors, and amici in these consolidated actions:

*Petitioners*: Petitioners in No. 22-1081 are the States of Ohio, Alabama,

Arkansas, Georgia, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri,

Montana, Nebraska, Oklahoma, South Carolina, Texas, Utah, and West Virginia.

Petitioners in No. 22-1084 are American Fuel & Petrochemical

Manufacturers, Domestic Energy Producers Alliance, Energy Marketers of

America, and National Association of Convenience Stores.

Petitioners in No. 22-1085 are Clean Fuels Development Coalition,

ICM, Inc., Illinois Corn Growers Association, Kansas Corn Growers Association,

Michigan Corn Growers Association, Missouri Corn Growers Association, and

Valero Renewable Fuels Company, LLC.

*Respondents*: Respondents are the U.S. Environmental Protection Agency

and (in No. 22-1081) its Administrator, Michael S. Regan, in his official

capacity.

*Movant-Intervenors*: There are currently pending motions to intervene (1) by the States of California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, and Washington; the Commonwealths of Massachusetts and Pennsylvania; the District of Columbia; and the cities of Los Angeles and New York; and (2) by the Center for Biological Diversity, Clean Air Council, Conservation Law Foundation, Environmental Defense Fund, Environmental Law & Policy Center, National Parks Conservation Association, Natural Resources Defense Council, Public Citizen, Sierra Club, and Union of Concerned Scientists.

**Ruling under Review**.  The decision under review is *California State Motor Vehicle Pollution Control Standards; Advanced Clean Car Program; Reconsideration of a Previous Withdrawal of a Waiver of Preemption; Notice of Decision*, 87 Fed. Reg. 14332 (Mar. 14, 2022).

**Related Cases**.  Movant-intervenors are aware of no related cases other than the ones that this Court has already consolidated.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies:

1.      The foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,289 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2.      This foregoing motion complies with the typeface and type style requirements of Fed. R. App. P. 27(a)(5)-(6) because it was prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

/s/ Elisabeth S. Theodore
Elisabeth S. Theodore

**CERTIFICATE OF SERVICE**

I certify that, on June 7, 2022, I caused the foregoing motion to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system. All participants in the consolidated cases are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Elisabeth S. Theodore
Elisabeth S. Theodore