<u>ORAL ARGUMENT HELD SEPTEMBER 15, 2023</u>

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

STATE OF OHIO, et al.,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, in his official capacity as Administrator of the U.S. Environmental Protection Agency,

Respondents.

No. 22-1081

(and consolidated cases)

## OPPOSITION OF STATE AND LOCAL GOVERNMENT RESPONDENT-INTERVENORS TO FUEL PETITIONERS' MOTION FOR LEAVE TO SUPPLEMENT THE RECORD AND TO FILE A SUPPLEMENTAL BRIEF

ROB BONTA
Attorney General of California
TRACY WINSOR
EDWARD H. OCHOA
Senior Assistant Attorneys General
MYUNG J. PARK
GARY E. TAVETIAN
Supervising Deputy Attorneys General

KRISTIN MCCARTHY
THEODORE A.B. MCCOMBS
M. ELAINE MECKENSTOCK
JONATHAN WIENER
CAITLAN MCLOON
Deputy Attorneys General
300 S. Spring Street, Ste. 1702
Los Angeles, CA  90013
Telephone: (213) 269-6438
Fax: (916) 731-2128
Email:  Caitlan.McLoon@doj.ca.gov
*Attorneys for State of California, by and through its Governor Gavin Newsom, its Attorney General Rob Bonta, and the California Air Resources Board*

(additional counsel on signature pages)

Fuel Petitioners seek leave to file a supplemental brief and to supplement the record on standing based on the pretext that State and Local Government Respondent-Intervenors (State Respondents) introduced new arguments at the September 15, 2023 oral argument. Neither the briefing nor the argument transcript supports this premise, and the motion should be denied.

In fact, Petitioners identify no authority supporting their requests. As to supplemental briefing, Petitioners cite cases in which this Court, *of its own accord*, has ordered parties to file such briefs after argument. Mot. 2 (citing *Pharmaceutical Care Mgmt. Ass'n v. District of Columbia*, 613 F.3d 179, 187 (D.C. Cir. 2010); *Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 495 (D.C. Cir. 2005)). Petitioners identify no instance of this Court permitting post-argument supplemental briefing upon unilateral request by a party; and for good reason, as EPA points out in its opposition. EPA Opp. 1-2. As to supplementing the record on standing, this Court has clearly indicated that "a litigant should not expect the court" to grant such a motion "[a]bsent good cause shown." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002); *see also* Mot. 2 (citing *Sierra Club* twice). Yet Petitioners' motion does not identify, much less establish, any of the grounds this Court has previously

1

recognized might justify such a motion. *See Nat'l Council for Adoption v. Blinken*, 4 F.4th 106, 111-112 (D.C. Cir. 2021) (describing grounds).

Nor does good cause exist to allow Petitioners' attempt to rehabilitate their standing showing at this late stage of the litigation. This Court's precedent identifies the evidence required to establish standing to challenge a Clean Air Act Section 209(b)(1) waiver when the alleged injuries stem from manufacturers' decisions about which vehicles to sell. *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 204 (D.C. Cir. 2011). Petitioners submitted 14 standing declarations with their opening brief, but none of them provided the requisite facts. Petitioners should not be allowed to evade this Court's well-established rule that "evidentiary presentation[s]" for standing should come "no later than" their opening brief, *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019), simply because the inadequacies of their submissions were discussed at oral argument.

For those reasons, the Court should deny Petitioners' motion. If, however, this Court grants Petitioners' motion, State Respondents respectfully request an opportunity to file supplemental briefing in response within 30 days of the Court's order.

## I. PETITIONERS' MOTION IS BASED ON FALSE PREMISES

Fuel Petitioners' extraordinary requests are based on two purported justifications. First, they claim the only standing "point" raised in State Respondents' brief was "that private petitioners had not shown causation." Mot. 1. In fact, State Respondents argued these Petitioners had not "met the 'substantially more difficult' challenge to establish causation *and redressability* based on the decisions of third-parties—i.e., automobile manufacturers." State Resp.-Int. Br. at 13 (emphasis added, quoting *Chamber of Commerce*, 642 F.3d at 201); *see also id.* (arguing Petitioners provided no evidence that vacatur would change manufacturers' decisions "about which vehicles to offer"); *id.* at 14 (arguing Petitioners had not "established any probability that manufacturers would change course if EPA's decision were vacated").

Fuel Petitioners clearly understood this; their reply brief argued State Respondents were "simply wrong" about the potential impacts of "*the outcome of this litigation*," Fuel Petitioners' Reply at 5 (emphasis added), and responded that "the causation *and redressability* prongs are clearly satisfied," *id.* at 6 (internal quotation marks omitted, emphasis added). This

3

Court likewise understood State Respondents to have argued that Fuel

Petitioners "haven't demonstrated redressability." *See* Transcript 24:13-17.[1]

Second, Fuel Petitioners claim that California raised a new mootness

point at oral argument. Mot. 1. In fact, mootness first arose at oral

argument in questions from the Court to Petitioners' counsel. Transcript

23:13. And Fuel Petitioners themselves raised mootness in an attempt to

deflect the Court's redressability questions. Transcript 24-25 (Court asking

about redressability); 27:5-10 (Petitioners: "the Government should bear a

pretty heavy burden in trying to show that we somehow can't get any

effective relief" and alleging a "capable of repetition problem").

Contrary to Petitioners' claim, California's counsel did not argue that

this case is moot because it is impossible "for automakers to change their

plans for any future years covered by California's preemption waiver." Mot.

1. Rather, California argued that Petitioners failed to identify or provide any

"evidence establishing a substantial probability that automakers would stop

selling the clean vehicles that consumers in California are demanding at

levels above what the standards require and that consumers are paying price

premiums for." Transcript at 59:25-60:1, 60:22-61:1; *id.* at 57:2-3

---

[1] Relevant excerpts from the official transcript of the September 15, 2023 oral argument can be found in Attachment A.

("Petitioners have not advanced any evidence of redressability."); 59:5-7

("[I]t's their burden to show redress, and they literally didn't put in any

evidence about market conditions.").  That was not a new argument.  *See*

State Resp.-Int. Br. 13 ("Petitioners provide *no* evidence … that vacatur

would change [manufacturer] decisions" concerning "which vehicles to

offer.").

Notably, Petitioners identify no point at which California's counsel

used the word "moot."  Instead, Petitioners rely on a reference to "Model

Year 2025," Mot. 1, that was part of California's response to a question from

the Court *about redressability in that specific model year*, Transcript at

59:25-60:3.  That was not a mootness argument.[2]  In any event, responses to

questions from the Court do not, by themselves, provide a basis for

supplemental briefing.  If they did, post-argument supplemental briefing

---

[2] To the extent Petitioners' motion turns on a purported need to
establish that "manufacturers can change their production, distribution, and
pricing plans well into" model year 2025, Proposed Supp. Br. 2, it is worth
noting that these same Petitioners alleged precisely the opposite in a
complaint filed in Minnesota district court in March 2023.  *See* Complaint at
¶ 65, *Clean Fuels Dev. Coalition v. Kessler*¸ No. 0:23-cv-00610-KMM-DTS
(D. Minn. March 13, 2023), ECF No. 1 ("[A]utomakers either already have
finalized, or will imminently finalize, their production and sales plans for
their model year 2025 vehicles.").

5

would likely become the norm.  Petitioners are not entitled to an exceptional, third brief based on their inaccurate claims.

## II.  FUEL PETITIONERS HAD AMPLE NOTICE OF THEIR REDRESSABILITY BURDEN AND FAILED TO MEET IT

Petitioners have not established, and cannot establish, good cause for another reason.  They had ample notice of the legal burdens they bore to establish standing in this case and ample opportunity to attempt to meet those burdens before oral argument.  Specifically, when petitioners allege injuries from manufacturers' responses to a Clean Air Act Section 209(b)(1) waiver granted to California, this Court's "jurisdiction … hinges entirely upon the impact that the waiver decision will have [in] the remainder of the time during which the California waiver applies."  *Chamber of Com.*, 642 F.3d at 204.  Thus, when some of the period in which the California waiver applied is in the past, as much of it is here, this Court "divide[s] [its] analysis of the injuries asserted by the petitioners into two time periods"—past and future.  *Id.* at 202.  And this Court looks to evidence about "market conditions" in the relevant periods to determine all three elements of standing.  *Id.*

Yet, although they filed their petitions in May 2022 (after most of the model years for this waiver were complete), Petitioners never parsed which

6

model years remained at issue or identified evidence specific to the *future* model years on which their standing rises or falls.  They likewise submitted no evidence of market conditions at the time they filed suit.  Instead, Petitioners' 14 declarants made only general statements that California's standards require delivery of certain vehicles to California's market, drawing no distinction between past and future time periods.  *E.g.*, ECF No. 1990958 at 100 ¶ 6.  Or they pointed to projections made in 2011 or 2012 concerning the impacts of *all* model years of these California standards combined.  *E.g.*, *id.* at 104 ¶ 7; *see also Chamber of Com.*, 642 F.3d at 203-04 (rejecting reliance on such dated analyses).  In other words, Petitioners' declarations are devoid of any discussion of manufacturers' likely responses to vacatur of EPA's waiver restoration in light of the market conditions present at the time the petitions were filed or anticipated in any future, remaining model year.[3]

State Respondents identified the inadequacy of Petitioners' showing in their brief.  State Resp.-Int. Br. 13-15.  State Respondents also submitted evidence of market conditions in 2022—the calendar year in which these

---

[3] Petitioners' proposed supplemental declarations do not cure this failure because they, too, are devoid of any discussion of current or future market conditions, even though the declarants acknowledge that these conditions—including consumer demand and applicable legal requirements—are highly relevant to manufacturer decisions.  *E.g.*, Decl. of Reginald Modlin at ¶ 6.

petitions were filed—indicating, *inter alia*, that manufacturers were selling more clean vehicles in California than California's standards require and that "consumers are willing to face long waits and pay [price premiums] to get [those] vehicles." State Resp.-Int. Addendum ADD-87, 90, 98. In reply, Petitioners simply pointed to additional analyses that once again made assertions about *all* model years combined (including the six that predated the petition). Fuel Petitioners' Reply 4 (citing to analysis "for Model Years 2017-2025," JA239, and to arguments that California has always needed these standards, for all the model years to which they apply, *e.g.*, JA237 (citing California's 2012 Waiver Request)).

Fuel Petitioners failed to heed this Court's direction that standing in this particular context would require "evidence that, if the waiver were vacated, [automobile manufacturers] would proceed on a different course more favorable to the petitioners." *Chamber of Com.*, 642 F.3d at 205-06. Whatever their reasons for that choice, they are not entitled to change course now, after briefing and argument have concluded. *Twin Rivers Paper Co.*, 934 F.3d at 613.

**CONCLUSION**

For the foregoing reasons, Fuel Petitioners' motion should be denied.

If the motion is granted, however, State Respondents respectfully request

leave to file a supplemental brief in response within 30 days.

Dated:  October 10, 2023          Respectfully submitted,

ROB BONTA
Attorney General of California
TRACY WINSOR
EDWARD H. OCHOA
Senior Assistant Attorneys General
MYUNG J. PARK
GARY E. TAVETIAN
Supervising Deputy Attorneys General
KRISTIN MCCARTHY
THEODORE A.B. MCCOMBS
M. ELAINE MECKENSTOCK
JONATHAN WIENER
Deputy Attorneys General


*/s/ Caitlan McLoon*
CAITLAN MCLOON
Deputy Attorney General
  300 S. Spring Street Ste. 1702
  Los Angeles, CA  90013
  Telephone: (213) 269-6438
  Fax: (916) 731-2128
  Email:  Caitlan.McLoon@doj.ca.gov
*Attorneys for State of California, by and*
*through its Governor Gavin Newsom, its*
*Attorney General Rob Bonta, and the*
*California Air Resources Board*

9

FOR THE STATE OF COLORADO

PHILIP J. WEISER
Attorney General

*/s/ Scott Steinbrecher*
SCOTT STEINBRECHER
Deputy Attorney General
DAVID A. BECKSTROM
Second Assistant Attorney General
Natural Resources and Environment
Section
Ralph C. Carr Colorado Judicial
Center
1300 Broadway, Seventh Floor
Denver, Colorado 80203
Telephone: (720) 508-6287
scott.steinbrecher@coag.gov

FOR THE STATE OF
CONNECTICUT

WILLIAM TONG
Attorney General
MATTHEW I. LEVINE
Deputy Associate Attorney General

*/s/ Scott N. Koschwitz*
SCOTT N. KOSCHWITZ
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
Telephone: (860) 808-5250
Fax: (860) 808-5386
Scott.Koschwitz@ct.gov

FOR THE STATE OF DELAWARE

KATHLEEN JENNINGS
Attorney General

*/s/ Christian Douglas Wright*
CHRISTIAN DOUGLAS WRIGHT
Director of Impact Litigation
RALPH K. DURSTEIN III
JAMESON A.L. TWEEDIE
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
Telephone: (302) 683-8899
Christian.Wright@delaware.gov
Ralph.Durstein@delaware.gov
Jameson.Tweedie@delaware.gov

FOR THE STATE OF HAWAII

ANNE E. LOPEZ
Attorney General

*/s/ Lyle T. Leonard*
LYLE T. LEONARD
Deputy Attorney General
465 S. King Street, #200
Honolulu, Hawaii 96813
Telephone: (808) 587-3050
Lyle.T.Leonard@hawaii.gov

11

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General
MATTHEW J. DUNN
Chief, Environmental Enforcement/
Asbestos Litigation Division

*/s/ Elizabeth Dubats*
ELIZABETH DUBATS
JASON E. JAMES
Assistant Attorneys General
Office of the Attorney General
69 W. Washington St., 18th Floor
Chicago, IL 60602
Telephone: (312) 814-3000
Elizabeth.Dubats@ilag.gov

FOR THE STATE OF MAINE

AARON M. FREY
Attorney General

*/s/ Emma Akrawi*
EMMA AKRAWI
Assistant Attorney General
6 State House Station
Augusta, ME 04333
Telephone: (207) 626-8800
Emma.Akrawi@maine.gov

12

FOR THE STATE OF MARYLAND

ANTHONY G. BROWN
Attorney General

*/s/ Cynthia M. Weisz*
CYNTHIA M. WEISZ
Assistant Attorney General
Office of the Attorney General
Maryland Department of the
Environment
1800 Washington Blvd.
Baltimore, MD 21230
Telephone: (410) 537-3014
Cynthia.Weisz2@maryland.gov

JOSHUA M. SEGAL
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD  21202
Telephone: (410) 576-6446
JSegal@oag.state.md.us

FOR THE STATE OF MINNESOTA

KEITH ELLISON
Attorney General

*/s/ Peter Surdo*
PETER N. SURDO
Special Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2127
Telephone: (651) 757-1061
Peter.Surdo@ag.state.mn.us

13

FOR THE STATE OF NEVADA

AARON D. FORD
Attorney General

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN
Solicitor General
DANIEL P. NUBEL
Senior Deputy Attorney General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
HStern@ag.nv.gov

FOR THE STATE OF NEW
JERSEY

MATTHEW J. PLATKIN
Attorney General

*/s/ Lisa J. Morelli*
LISA J. MORELLI
RACHEL MANNING
NELL HRYSHKO
Deputy Attorneys General
New Jersey Division of Law
25 Market Street
Trenton, New Jersey 08625
Tel: (609) 376-2745
Lisa.Morelli@law.njoag.gov

FOR THE STATE OF NEW MEXICO

RAÚL TORREZ
Attorney General

*/s/ Bill Grantham*
BILL GRANTHAM
Assistant Attorney General
Attorney General of New Mexico
408 Galisteo St.
Villagra Bldg.
Sante Fe, NM 87501
Tel: (505) 717-3520
wgrantham@nmag.gov

FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General
JUDITH N. VALE
Deputy Solicitor General
ELIZABETH A. BRODY
Assistant Solicitor General
YUEH-RU CHU
Chief, Affirmative Litigation Section
Environmental Protection Bureau

*/s/ Gavin G. McCabe*
GAVIN G. MCCABE
ASHLEY M. GREGOR
Assistant Attorneys General
28 Liberty Street, 19th Floor
New York, NY 10005
Telephone: (212) 416-8469
Gavin.McCabe@ag.ny.gov

14

FOR THE STATE OF NORTH
CAROLINA

JOSHUA H. STEIN
Attorney General
DANIEL S. HIRSCHMAN
Senior Deputy Attorney General

*/s/ Asher P. Spiller*
ASHER P. SPILLER
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6400
ASpiller@ncdoj.gov


FOR THE STATE OF RHODE
ISLAND

PETER F. NERONHA
Attorney General

*/s/ Nicholas M. Vaz*
NICHOLAS M. VAZ
Special Assistant Attorney General
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
Telephone: (401) 274-4400 ext. 2297
NVaz@riag.ri.gov

FOR THE STATE OF OREGON

ELLEN F. ROSENBLUM
Attorney General

*/s/ Paul Garrahan*
PAUL GARRAHAN
Attorney-in-Charge
STEVE NOVICK
Special Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.state.or.us
Steve.Novick@doj.state.or.us


FOR THE STATE OF VERMONT

CHARITY R. CLARK
Attorney General

*/s/ Hannah Yindra*
HANNAH YINDRA
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3171
Hannah.Yindra@vermont.gov

FOR THE STATE OF
WASHINGTON

ROBERT W. FERGUSON
Attorney General

*/s/ Christopher H. Reitz*
CHRISTOPHER H. REITZ
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, WA 98504
Telephone: (360) 586-4614
Chris.Reitz@atg.wa.gov

FOR THE COMMONWEALTH
OF MASSACHUSETTS

ANDREA JOY CAMPBELL
Attorney General
SETH SCHOFIELD
Senior Appellate Counsel

*/s/ Matthew Ireland*
MATTHEW IRELAND
Assistant Attorney General
Office of the Attorney General
Energy and Environment Bureau
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
Matthew.Ireland@mass.gov

FOR THE COMMONWEALTH OF
PENNSYLVANIA

MICHELLE HENRY
Attorney General

*/s/ Ann R. Johnston*
ANN R. JOHNSTON
Asst. Chief Deputy Attorney General
Civil Environmental Enforcement Unit
Office of the Attorney General
Strawberry Square
14th Floor
Harrisburg, PA 17120
Telephone: (717) 497-3678
ajohnston@attorneygeneral.gov

FOR THE CITY OF LOS ANGELES

HYDEE FELDSTEIN SOTO
City Attorney

*/s/ Michael J. Bostrom*
MICHAEL J. BOSTROM
Senior Assistant City Attorney
201 N. Figueroa St, 13th Floor
Los Angeles, CA 90012
Telephone: (213) 978-1867
Fax: (213) 978-2286
Michael.Bostrom@lacity.org

FOR THE DISTRICT OF
COLUMBIA

BRIAN L. SCHWALB
Attorney General

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General for the
District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
Telephone: (202) 724-6609
Fax: (202) 741-0649
Caroline.VanZile@dc.gov

FOR THE CITY OF NEW YORK

HON. SYLVIA O. HINDS-RADIX
New York City Corporation Counsel
ALICE R. BAKER
Senior Counsel

*/s/ Christopher G. King*
CHRISTOPHER G. KING
Senior Counsel
New York City Law Department
100 Church Street
New York, NY 10007
Telephone: (212) 356-2074
cking@law.nyc.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing opposition complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 1,675 words. I further certify that this motion complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using a proportionally spaced typeface (Times New Roman) in 14-point font.

Dated:      October 10, 2023

*/s/ Caitlan McLoon*
Caitlan McLoon
*Attorney for State of California, by and through its Governor Gavin Newsom, its Attorney General Rob Bonta, and the California Air Resources Board*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2023 I electronically filed the foregoing opposition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the Court's CM/ECF system.

I further certify that all parties are participating in the Court's CM/ECF system and will be served electronically by that system.

Dated:     October 10, 2023

> /s/ Caitlan McLoon
> Caitlan McLoon
> *Attorney for State of California, by and through its Governor Gavin Newsom, its Attorney General Rob Bonta, and the California Air Resources Board*

# Attachment A

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

- - - - - - - - - - - - - - - X
                              :
STATE OF OHIO et al.,         :
                              :
          Petitioners,        :
                              :
     v.                       :    No. 22-1081 et al.
                              :
ENVIRONMENTAL PROTECTION       :
AGENCY AND MICHAEL S. REGAN,  :
in his official capacity as   :
Administrator of the U.S.     :
Environmental Protection      :
Agency,                       :
                              :
          Respondent.         :
                              :
- - - - - - - - - - - - - - - X

Friday, September 15, 2023

Washington, D.C.

The above-entitled matter came on for oral argument pursuant to notice.

BEFORE:

     CIRCUIT JUDGES WILKINS, CHILDS, AND GARCIA

APPEARANCES:

     ON BEHALF OF THE FUEL PETITIONERS:

     JEFFREY B. WALL, ESQ.

     ON BEHALF OF THE STATE PETITIONERS:

     BENJAMIN M. FLOWERS, ESQ.

**eScribers, LLC**
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
Tel: (800) 257-0885
www.escribers.net

WC

1  they've done whole program under (C) and sometimes they

2  haven't, but the last time the agency addressed this -- and

3  this is at page 525 of the JA -- the EPA said, we don't do

4  whole program under (C) because it wouldn't make sense; we

5  look at whether manufacturers can comply with individual

6  standards, same thing for need.

7         JUDGE GARCIA:  Understood.  Thank you.  And I

8  think with the indulgence of my colleagues, I do have some

9  threshold questions about jurisdiction.

10        MR. WALL:  Sure.

11        JUDGE GARCIA:  And so the first is just -- your

12 petition and the waiver concerned model years '22 to '25.

13 Is the petition now moot as to model years '22 and '23?

14 Just as a technical matter, those vehicles have been rolled

15 out.  Is that the right way to think about it?

16        MR. WALL:  I'm not sure, Judge Garcia, because I

17 think you would -- the mootness is for the claim, and the

18 claim is made against all the model years.  So I think the

19 claim isn't moot.  Whether we could --

20        JUDGE GARCIA:  Fair enough.  Fair enough.  So --

21        MR. WALL:  -- whether we could obtain relief for

22 those model years, I --

23        JUDGE GARCIA:  Right.

24        MR. WALL:  -- nobody has challenged that -- I'm

25 honestly not sure.

1          JUDGE GARCIA:  Okay.  So I think if we're thinking

2    about standing and, in particular, redressability, at least

3    the way to think about that is to focus on model years '24

4    and '25, because that's still what's in the future and

5    plausibly affected --

6          MR. WALL:  I -- I mean --

7          JUDGE GARCIA:  -- and --

8          MR. WALL:  -- at a minimum, Judge Garcia, no one

9    on the other side of the case -- and they've made every

10   argument, I think, they could -- no one has said we cannot

11   get effective relief through the end of the application of

12   this waiver.  No one is here sort of saying, you have a --

13         JUDGE GARCIA:  But that's respectfully not

14   accurate.  The States --

15         MR. WALL:  Yes.

16         JUDGE GARCIA:  -- on page 15 of their brief, make

17   an argument that you haven't demonstrated redressability --

18         MR. WALL:  So --

19         JUDGE GARCIA:  -- and so here's --

20         MR. WALL:  -- I took -- I took the States to be

21   challenging our Article III standing on harm grounds.  Maybe

22   they do also say something about redressability, but I think

23   it is clear that we could get relief for the later model

24   years under the rule.

25         JUDGE GARCIA:  So let's -- let me ask the

WC

1    question, then, because I think in the Chamber of Commerce

2    case, which was a generally similar situation, the Court

3    addressed redressability and said there was no evidence that

4    if the waiver were vacated, manufacturers would proceed on a

5    different course more favorable to petitioners, and here we

6    have statements from several of these manufacturers -- not

7    all of them, but many manufacturers -- saying they would not

8    change their electrification plans, and we have a lot of

9    evidence that in this industry, pricing and production plans

10   are made years in advance.

11       So the question is, what is the evidence in this

12   record that any manufacturer would change its fleet in model

13   years '24 and '25 if we were to rule in your favor?

14       MR. WALL:  So I think the two things I'd point you

15   to, Judge Garcia -- the first is in page 477 of the joint

16   appendix.  Toyota said -- and Toyota is not among the

17   automakers coming in in this case -- Toyota said it had

18   designed around the withdrawal, strongly suggesting that it

19   wanted the -- it wanted the withdrawal of the waiver to stay

20   in place because it had made decisions based on that, and

21   the -- the industry brief, I think, confirms this at page

22   17, because what they say is, they -- those automakers, the

23   ones that filed the brief -- have made investments in

24   electrification in order to meet California standards, and

25   they say they are worried that if the waiver is withdrawn,

1    where we've come in -- and we've said we've got clear harm

2    from the rule in an Article III sense, and we know the rule

3    extends for several years, and we have at least one

4    automaker in the record that has said it made its decisions

5    in reliance on the withdrawal -- it seems to me the

6    Government should bear a pretty heavy burden in trying to

7    show that we somehow can't get any effective relief before

8    the end of this rule, and if that were true, Judge Garcia, I

9    think it would start to raise a pretty serious capable of

10   repetition problem, because these are done by sets of model

11   years.

12          We came right in.  We came to this Court as

13   quickly as we could.  If the answer now is you can't get

14   effective relief, it seems to me we're going to be in a real

15   bind every time we do this.

16          JUDGE GARCIA:  I appreciate that that might be the

17   case in this particular case, but sort of because of the

18   long-term planning requirements in this industry -- these

19   are generally set 10 years at a time, right?  The 2013

20   waiver was for 2015 to 2025, and I'm, candidly, entirely

21   with you.  Common sense would just dictate that the whole

22   point of this rule is to reduce liquid fuel consumption over

23   a 10-year period.  That's certainly going to happen -- but

24   in this particular case, it seems like we're in a unique

25   situation where now, my understanding is, some model year

1  respondent-intervenor California.  I want to start, Judge

2  Garcia, with your questions about standing.  Petitioners

3  have not advanced any evidence of redressability.  Their

4  declarations refer only to California's analysis that it did

5  in its original rulemaking back in 2011 or 2012, which

6  provides no evidence about current market conditions.

7        And to their point that -- and then the Toyota

8  comment, what Toyota was saying -- what Toyota was asking of

9  EPA was not to restore the waiver for the years during which

10  the withdrawal had been in effect.  Those years are in the

11  past.  Toyota said nothing about its inability to meet

12  California standards in the future -- all the years that we

13  are now dealing with -- or indicated that it would, you

14  know, not be able to meet them or would change its plans if

15  the restoration decision was vacated.

16        JUDGE GARCIA:  Well, their argument on standing

17  certainly has a pretty strong commonsense appeal, right?

18  The goal of this is to reduce liquid fuel consumption.  If

19  it's not going to make any difference, why did California

20  and EPA go through all this trouble, and by the same token,

21  wouldn't vacating it reverse that effect?  I mean, why isn't

22  that the simple open-and-shut way to think about this?

23        MS. MECKENSTOCK:  Well, so two points, Your Honor,

24  and first, this is a threshold matter.  The point of these

25  standards is to reduce emissions, not reduce fuel

1  was withdrawn, it was -- that withdrawal was immediately

2  challenged, so the automakers continued to plan to comply

3  with it, with the original waiver, and now here we are 10

4  years after the fact, and there just isn't any time left for

5  them -- and beyond that, it's their burden to show redress,

6  and they literally didn't put in any evidence about market

7  conditions now that could support the conclusion they need.

8          And as to their point that they couldn't have

9  challenged the original waiver in 2013, that's not true.

10 They rely on the deemed to comply provision, but I think

11 it's important for this Court to understand, the deemed to

12 comply provision only ever applied to the greenhouse gas

13 emission standards.  There's never been a deemed to comply

14 provision in the zero-emission vehicle standards.  So they

15 certainly could have challenged the waiver as to those.

16         I want to turn, then, to the statutory

17 interpretation and EPA's whole-program approach, and I want

18 to start at the very beginning of the statute with what it

19 directs EPA to do, which is to waive application of

20 preemption to the state -- not for particular standards, but

21 to the state.

22         JUDGE GARCIA:  I'm very sorry, one more question

23 on standing.

24         MS. MECKENSTOCK:  Sure.

25         JUDGE GARCIA:  In your view, what evidence would

1    they need to show redressability?  Is it some version of

2    that in a certain time line, manufacturers would decide to

3    reduce prices on conventional vehicles by model year '25?

4            MS. MECKENSTOCK:  So fuel petitioners' arguments

5    are not really about pricing.  They're just about sales.  So

6    they would need evidence that manufacturers are going to

7    change their product lines and sell different vehicles in

8    model year 2025, which starts as early as January 1st of

9    next year, if you -- if --

10           JUDGE GARCIA:  I think their injuries are

11   redressed if more people buy gas-powered cars, and one way

12   to do that would be to reduce the price on it, right?

13           MS. MECKENSTOCK:  I suppose that manufacturers

14   could do that.  I just --

15           JUDGE GARCIA:  Okay.

16           MS. MECKENSTOCK:  -- I was just trying to

17   distinguish between the price injury that state petitioners

18   assert.

19           JUDGE GARCIA:  I appreciate that.  Sorry, go

20   ahead.

21           MS. MECKENSTOCK:  No, no problem.  No, all -- and

22   all I'm saying is, I think they would need some evidence

23   establishing a substantial probability that automakers would

24   stop selling the clean vehicles that consumers in California

25   are demanding at levels above what the standards require and

1  that consumers are paying price premiums for.  In other

2  words, manufacturers are currently making the cars people

3  want and people are willing to pay a lot for them.  So I

4  think they need a lot of evidence to show that manufacturers

5  are going to stop doing that.

6       JUDGE GARCIA:  Thank you.  Please proceed with the

7  statutory points.

8       MS. MECKENSTOCK:  So, as I was saying, the waiver

9  provision directs EPA to waive application of preemption to

10  the state, not for particular standards, and if Congress had

11  intended the waiver to be standard-specific, it would have

12  used the language it used in 209(b)(2), where it says each

13  state standard, and as counsel for EPA explained, Congress

14  maintains that program-level review by starting with the

15  first criterion as an aggregate test and then carrying

16  through that aggregate language with the such state

17  standards, and there is no other set of standards to which

18  such could refer other than the standards in the aggregate,

19  and this is all consistent with Congress's intention that

20  California have a complete program.

21       And, Judge Wilkins, to your point about 202(a) and

22  EPA's program being comprehensive, you're right, EPA is

23  required to regulate every pollutant it concludes is

24  harmful, and it doesn't make sense that California would --

25  that Congress would have said, compare that comprehensive